UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PUTAMAYO WORLD MUSIC, INC. | * | CA # 02-0350 |
| VERSUS | * | SECTION B |
| MARDI GRAS RECORDS, INC. | * | MAGISTRATE 4 |

* * * * * * * * * * * * * * * * * * * * * * *

### ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES defendant Mardi Gras Records, Inc., through undersigned counsel, who ANSWERS plaintiff Putamayo World Music, Inc.'s Amended complaint for preliminary and permanent Injunction and for damages, as follows:

**1.**

Admitted.

**2.**

Admitted.

**3.**

Admitted.

**4.**

Admitted.

**5.**

Defendant does not possess sufficient information to justify a belief on the date of first use of the alleged tradedress, nor upon the number of unit sales of CD albums utilizing the alleged tradedress.

The remainder of the allegation states a conclusion of law, and is therefore Denied.

5 (A).

Denied, as a matter of law and fact, that the alleged trade dress in the Putamayo Zydeco CD is non-functional. Specifically, it is denied that the cover art design features of the Putamayo Zydeco CD, consisting primarily of a washboard player and an accordion player, serve no aesthetic function.

The remainder of the allegation states a conclusion of law, and is therefore Denied

5 (B)

Denied for lack of information sufficient to justify a belief thereon. Further denied, on information and belief, in that each and every Putamayo CD contains cover art that is utilitarian, featuring design elements peculiar to a particular music genre or geographic locale.

5 (C)

Denied that the "artwork and tradedress" has developed a secondary meaning in the marketplace. Defendant demand strict proof of primary source-identification of plaintiff's alleged artwork and trade dress.

6.

Admitted that Putamayo released a compilation Zydeco album CD in January 2000. Denied that the cover art utilized thereon contains the same design features as other CDs in the Putamayo catalog.

6 (A).

Admitted that Mardi Gras Records, Inc. released an album CD entitled "Ultimate Mardi Gras" in late 2001. Denied that "Ultimate Mardi Gras" utilized or infringed any cover art design or design feature proprietary to Putamayo.

6 (B).

Admitted that Mardi Gras Records competes, and intends to compete with Putamayo Records, as it does with all independent and major record labels, in the sale and distribution of album CDs. Denied that Mardi Gras Records competes on the basis of cover art, but rather on the basic of the music and songs it produces. .

7.

Defendant does not possess information sufficient to justify a belief on monies earned by Putamayo. The remainder of the allegation states a conclusion of law, and is therefore Denied

8.

The allegation states a conclusion of law, and is therefore Denied

8 (A)

Admitted to the extent that Mardi Gras Records has, from time to time, utilized a folk art style of cover art design in the roots music market for many years. Denied that there is any intent to confuse consumers as to designation of source of any Mardi Gras Records album CDs. The remainder of the allegation states a conclusion of law, and is therefore Denied

8 (B)

Denied.

9.

The allegation states a conclusion of law, and is therefore Denied

10.

The allegation states a conclusion of law, and is therefore Denied

11.

Admitted that Putamayo released a Zydeco album CD in January of 2000 with a cover of folk art design features. The remainder of the allegation states a conclusion of law, and is therefore Denied.

12.

Admitted that Mardi Gras Records released its "Ultimate Zydeco" album CD in June 2001 with folk art design features on the cover. The remainder of the allegation states a conclusion of law, and is therefore Denied.

13.

Admitted

14.

The allegation states a conclusion of law, and is therefore Denied

15.

Denied that Mardi Gras Records knew or would have known of any alleged rights claimed by Putamayo in this lawsuit.

16.

Admitted that Mardi Gras Records has refused to recognize any such alleged rights.

17.

Denied.

18.

Denied.

19.

Admitted that Mardi Gras Records has been marketing and selling Ultimate Zydeco since June of 2001. The remainder of the allegation states a conclusion of law, and is therefore Denied.

20.

Denied that Putamayo has gone to great effort and expense to produce compilation albums, where the music and songs contained on such compilation albums are owned exclusively by third parties.

21.

Denied that any consumer confusion could possibly exist, where there is no overlap between the two sets of songs and music on the two album CDs, where the design features are indicative primarily of musical genre, and where the designation of source is clearly identified on both album CDs, according to industry standard custom and practice. The remainder of the allegation states a conclusion of law, and is therefore Denied.

22.

Denied that any misrepresentation could possible exist there is no overlap between the two sets of songs and music on the two album CDs, and where the designation of source is clearly identified on both album CDs, according to industry standard custom and practice. The remainder of the allegation states a conclusion of law, and is therefore Denied.

23.

Denied that Putamayo has created the roots market for Zydeco music, and denied further that Putamayo has created any goodwill therein.

24.

Denied that there is any possible consumer confusion regarding the designation and source of origin of the Mardi Gras Records Zydeco album CD. The remainder of the allegation states a conclusion of law, and is therefore Denied

.25.

Denied. And further, specifically denied that the quality of the Mardi Gras Records CD is somehow inferior to that of the Putamayo Zydeco CD, where Mardi Gras Records owns all of the original Zydeco music on its CD and Putamayo owns none of the music on its Zydeco CD. The remainder of the allegation states a conclusion of law, and is therefore Denied

26.

Admitted that notice to discontinue was given by Putamayo to Mardi Gras Records shortly after the release by Mardi Gras Records of its Ultimate Zydeco album CD. Denied that the thrust of such notice claimed the alleged rights sought to be enforced herein, but rather claimed violation of copyrights, which claims do not appear herein.

27.

Admitted that Mardi Gras Records continues to distribute its entire catalog.. The remainder of the allegation states a conclusion of law, and is therefore Denied

28.

Denied.

29.

Denied

30.

Denied.

31.

Does not call for an answer, but is denied out of an abundance of caution.

32.

Does not call for an answer, but is denied out of an abundance of caution

33.

The allegation states a conclusion of law, and is therefore Denied

34.

Denied for lack of information sufficient to justify a belief thereon. The remainder of the allegation states a conclusion of law, and is therefore Denied

34 (A).

Denied. The different artwork on the covers of the Putamayo compilation catalog are similar only in that they are produced by the same illustrator, but with different features, each pertaining to the musical genre and geographic locale indicative of the source of the rented or licensed tracks compiled on each album CD.

34 (B).

Denied. All such cover art design features primarily serve the aesthetic function of indicating the geographic local and the style of musical genre of the songs embodied on the album CD.

34 (C ).

Denied. Defendant demands strict proof thereof.

35.

Denied for lack of information sufficient to justify a belief thereon. The remainder of the allegation states a conclusion of law, and is therefore Denied

36.

The allegation states a conclusion of law, and is therefore Denied

37.

The allegation states a conclusion of law, and is therefore Denied

38.

The allegation states a conclusion of law, and is therefore Denied

39.

Does not call for an answer, but is denied out of an abundance of caution

40.

Does not call for an answer, but is denied out of an abundance of caution

41.

Does not call for an answer, but is denied out of an abundance of caution

42.

The allegation states a conclusion of law, and is therefore Denied

43.

Does not call for an answer, but is denied out of an abundance of caution

44.

Does not call for an answer, but is denied out of an abundance of caution

45.

Does not call for an answer, but is denied out of an abundance of caution

46.

The allegation states a conclusion of law, and is therefore Denied

## AFFRIMATIVE DEFENSES

1.

As a matter of law, no proprietary right to unregistered product design trade dress exists in cover art design features of album CDs where the primary purpose of the cover art design feature is to identify the geographic locale from which the songs and music on the album CD originate.

2.

As a matter of law, no proprietary right to unregistered product design tradedress exists in cover art design features of album CDs where the primary purpose of the cover art design feature is to identify the musical style or genre of the songs and music on the album CD.

3.

As a matter of law, the trademark law doctrine of aesthetic functionality precludes recognition of a claim based on tradedress rights where the primary purpose of the cover art design features is to indicate either the geographic local or the music style of the songs and music on the album CD.

4.

Allegation that the overall look and feel of the Putamayo cover art is utilized to merely distinguish a Putamyo CD from the competition, is insufficient as a matter of law to state a claim in unregistered trade dress product design, absent proof that that such distinction serves the primary purpose of identifying the source of manufacture of the product.

5.

Title 17 of the United States Code, generally Copyright Law, is readily available to plaintiff to protect against substantially similar cover art designs. Where such a claim is readily available under copyright law, no claim for inherent distinctiveness of album CD cover art design features under the Lanham Act is cognizable as a matter of law, absent proof of secondary meaning, pursuant to Wal-Mart v. Samara Bros.

6..

It is insufficient as a matter of law to establish a proprietary right for unregistered product design trade dress with the allegation that the alleged tradedress merely "establishes a favorable association in the public's eye."

7.

It is insufficient as a matter of law to establish a proprietary right for unregistered product design trade dress in a product line of sixty different album covers with the mere allegation that the "entire look and feel of the catalog...is identified by the public and competitors as a symbol of the alleged owner's products "

8..

It is insufficient as a matter of law to claim ownership, through unregistered tradedress, over an entire genre of niche music recordings, by virtue of cover art design features indicating the source of the particular roots music genre, through depiction of instrumentation, geographical locale, or otherwise.

9.

It is insufficient as a matter of law to claim consumer confusion in the unregistered product design trade dress of album CD covers, where there is no overlap between the two

sets of songs and music on the two album CDs, and where the designation of source is clearly identified on both album CDs, according to industry standard custom and practice.

10..

It is insufficient as a matter of law to claim unregistered trade dress infringement based upon the allegation that the product design has created merely "a favorable impression in the public's eye".

11.

It is insufficient as a matter of law to claim unregistered trade dress infringement by alleging recognition of the trade dress in connection with concepts, lifestyles, publications and products, where the allegedly infringing product is an album CD, which contains entirely different music, depicts genre-identifying design features on it cover art, and clearly identifies its source of manufacture.

12..

It is insufficient as a matter of law to claim secondary meaning, or acquired distinctiveness, in unregistered product design trade dress by alleging merely the "extensive use in advertising and in connection with concepts, lifestyles, publications and products".

**WHEREFORE**, defendant Mardi Gras Records, Inc. prays that this answer and these affirmative defenses be deemed good and sufficient, and that after all proceedings be had, the claims brought by plaintiff ought be dismissed with prejudice, together with all equitable relief in the premises.

Respectfully submitted,

*[signature]*

Justin Asher Zitler: La. Bar #18517
Attorney for Mardi Gras Records, Inc.
2833 Napoleon Ave.
New Orleans, LA. 70115
504-897-0886

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above and foregoing pleading has been served upon opposing counsel this 20th day of June, 2002, be depositing same in the U.S. mail, properly addressed and postage prepaid.

*[signature]*

STATE OF LOUISIANA

PARISH OF ORLEANS

### VERIFYING AFFIDAVIT

Before me, the undersigned notary public, duly commissioned in and for the Parish of Orleans, State of Louisiana, personally came and appeared this day:

**Warren Hildebrand**

who, being duly sworn, did depose and say that Mardi Gras Records Inc., of which he is President, is a litigant in the above and foregoing cause; that he has read all allegations of fact herein contained; and that same are true and correct to the best of his knowledge and belief.

Sworn to and subscribed
before me this 20 day
of June, 2002.

_____
Notary Public